<u>**AFFIDAVIT**</u>

1) **AFFIANT/AGENT.**

I, David Marcus, a Border Patrol Agent of the United States Border Patrol, Customs and Border Protection (USBP/CBP), have been employed by the USBP/CBP for 13 years and am currently assigned to the Grand Forks Sector Prosecutions Unit in Grand Forks, North Dakota.

Your affiant has reason to believe that CADENA-Velazquez, Jose Adelfo (DOB: XX/XX/1976), used fraudulent documents in order to gain employment, a violation of 18 U.S.C. § 1546(a), resisted arrest, a violation of 18 U.S.C. § 111(a)(1) and used a fraudulent social security card, a violation of 42 U.S.C. § 408(a)(7)(B).

2) **Summary of Probable Cause.**

On May 15, 2025, the Fargo, North Dakota Police Department contacted Border Patrol Agent Cory Froese to report a suspected illegal alien, Jose Adelfo CADENA-Velazquez (Date of Birth: XX/XX/1976). A concerned citizen provided this information to the Fargo Police Department. BPA Froese spoke with the reporting person over the phone using a translation service. The reporting person claimed CADENA has a history of committing alleged acts of Domestic Violence. They also said CADENA is employed at the Wild Bill's Saloon in Fargo, North Dakota, and used fraudulent documents to gain employment. The reporting person claimed CADENA was residing at 4339 9th Ave. S. Apt. 11 in Fargo, North Dakota. The reporting person provided BPA Froese a photograph that contained three documents, two of which displayed the name Jose A. CADENA, the third document was unrelated to CADENA. One document appeared to be a Lawful Permanent Resident Card that showed a photo of CADENA and the name CADENA, Jose A, with an alien registration number of XXX-XXX-763. BPA Froese conducted records checks utilizing law enforcement databases and found alien registration number XXX-XXX-763 came back to a person who was not CADENA. The other document appeared to be a social security card with the name Jose A. CADENA, and a social security number of XXX-XX-4578. The reporting person provided BPA Froese with a cell phone number they claimed belonged to CADENA. BPA Froese conducted records checks on the phone number and found it was used by CADENA. BPA Froese conducted immigration records checks utilizing law enforcement systems. No immigration record was found for CADENA.

On May 16, 2025, the reporting person provided photos of a vehicle, which was reportedly being used by CADENA to BPA Froese. The vehicle was a white Jeep Wrangler and displayed North Dakota license plate 144EJX. The reporting person also provided a photo of the vehicle's title, which included the identification number to BPA Froese. Records checks on the VIN showed the vehicle was registered to CADENA, with the address of 4339 9th Ave. S. Apt 11, Fargo, North Dakota, 58103.

1

On May 17, 2025, the reporting person provided BPA Froese with several photos of who was reportedly CADENA. The photos provided closely resembled the photo from the suspected fraudulent Lawful Permanent Resident card.

On May 20, 2025, BPA Dalton Lebow and Supervisory Border Patrol Agent (SBPA) Michael McIntee, conducted surveillance at Wild Bill's Saloon in Fargo. Agents located the white Jeep in the parking lot of Wild Bill's Saloon in Fargo.

On May 21, 2025, BPA Lebow conducted surveillance at 4339 9th Ave. Circle S. Apt. 11 in Fargo, North Dakota. BPA Lebow observed a silver sedan bearing North Dakota license plate 816EOR leaving the apartments and the driver appeared to be the same person on the permanent resident card that was provided by the reporting person. BPA Lebow then confirmed the sedan was registered to CADENA by utilizing law enforcement databases. BPA Lebow then drove to Wild Bill's Saloon and observed the silver sedan was parked at the restaurant.

On July 28, 2025, BPA Lebow conducted a document verification check on the Lawful Permanent Resident Card (LPR), utilizing law enforcement databases. The alien number XXX-XXX-763, that was displayed on the card came back to a person who was not CADENA. The card showed the name CADENA, Jose A, and displayed a photo of CADENA. BPA Lebow also utilized law enforcement databases to check CADENA's immigration record. No immigration records were found for CADENA's immigration status. There was also no record of CADENA making a lawful entry into the United States, currently having or applying for permanent resident status. This information led BPA Lebow to believe the LPR card in the photo provided by the reporting person was fraudulent.

On July 29, 2025, Special Agent Jimenez with Homeland Security Investigations confirmed with the Social Security Administration that the social security number on the social security card belonged to someone other than CADENA. The card displayed the name Jose A CADENA with the social security number of XXX-XX-4578.

3) **Encounter**

On August 18th, BPAs Dalton Lebow, Raymond Ritz, SBPA Michael McIntee and Immigration and Customs Enforcement-Removal Operations (ICE-ERO) Officer Kolton Wederquist, conducted surveillance at CADENA's residence, the Dock 9 Apartments in Fargo, North Dakota. At approximately 9:30 a.m., the white Jeep displaying North Dakota license plates 144EJX left the parking area of the Dock 9 Apartments.

BPAs Lebow and Ritz performed a traffic stop on the Jeep at approximately 9:30 a.m. at the intersection of 9th Ave. Circle S. and 9th Ave. S. As BPAs Lebow and Ritz approached the vehicle, they identified themselves as Border Patrol Agents and displayed official Border Patrol insignia, to include a badge on their body armor plate carriers. The driver rolled down his window and agents noticed the driver appeared to be CADENA, based on the photo of him from the fraudulent LPR card. There were no other occupants

in the vehicle.  BPA Lebow asked for identification, the driver provided a Minnesota driver's license, which displayed the name CADENA-Velazquez, Jose Adelfo and an image which appeared to be the same person driving the vehicle.  BPA Lebow then asked CADENA about his legal status in the United States.  CADENA refused to answer by shaking his head and saying, "no answer".  BPA Lebow ordered CADENA to turn off his vehicle and step out.  Then CADENA rolled up the driver side window and locked the door.  BPA Lebow warned CADENA if he did not open the door he would break the window.

CADENA continued to ignore commands to turn off and exit his vehicle and began using his cell phone.  At this time ICE-ERO Officer Wederquist arrived.  Agents continued to order CADENA to turn off the vehicle and step out.

SBPA McIntee arrived on scene and attempted to question CADENA about his immigration status.  CADENA continued to ignore commands and left his window up.  SBPA McIntee explained to CADENA that he was being detained.  SBPA McIntee also informed CADENA agents were conducting an immigration inspection and that he had to provide documentation showing status in the United States.  CADENA said he already provided his driver's license.  SBPA McIntee informed him that he needed documentation other than a driver's license that proves his immigration status.  SBPA McIntee continued to explain to CADENA, in both English and Spanish, that they were conducting an immigration inspection and he had to provide documentation showing legal status.  CADENA said he had to speak with his lawyer.  SBPA McIntee again informed CADENA, in English and Spanish, that he had to provide documentation as to his status in the United States.  CADENA continued to ignore SBPA McIntee's commands and refused to turn off and exit the vehicle.

SBPA McIntee then directed BPA Lebow to break the driver's side window utilizing a window punch.  BPA Lebow used his collapsable baton to clear the shattered glass.  BPA Lebow then reached into the vehicle and unlocked the door.  BPA Lebow grabbed CADENA's left arm as ICE-ERO Officer Wederquist climbed into the back seat to extract CADENA from the vehicle.  BPA Ritz ordered CADENA numerous times to exit the vehicle.

CADENA was bracing himself within the vehicle by pushing against the steering wheel and attempting to pull away from BPA Lebow.  SBPA McIntee ordered CADENA to step out of the vehicle.  CADENA resisted by pulling away from BPA Lebow, trying to free his left arm.  Agents and officers quickly realized while trying to extract CADENA, that he was physically strong.  CADENA was pushing his feet into the floor to brace himself against the seat, he was holding his phone in his right hand.  BPA Lebow attempted to guide CADENA out of the vehicle, but CADENA turned his body and leaned further into the vehicle towards the passenger seat which sent BPA Lebow's torso into the vehicle with him.  BPA Lebow became entangled with CADENA briefly while he continued to attempt to extract CADENA from the vehicle with the assistance from ICE-ERO Officer Wederquist.  Agents and Officers again noticed during this engagement that CADENA was physically strong, as he was able to physically resist being extracted

3

from the vehicle by multiple agents. It took multiple agents to restrain one of CADENA's arms. Once agents successfully removed his cell phone from his hand he attempted to reach for an unknown object on the passenger seat. BPA Ritz ordered CADENA to stop reaching, and shouted to agents he was reaching for something.

SBPA McIntee then climbed into the front passenger seat and grabbed CADENA's right arm. SBPA McIntee was unable to control CADENA's right arm due to his physical strength. CADENA pulled his arm from SBPA McIntee's grasp and swung his elbow towards him. McIntee caught the elbow with his hands and deflected the blow. McIntee then applied a pressure point technique by placing his thumb in CADENA's mandibular angle, a spot right behind the ear, and pushed him towards the door. It took all four agents and officers present, in addition to the pressure point technique, to extract CADENA from the vehicle. Agents were then able to guide CADENA out of the vehicle and assisted him to the ground in the prone position. Once CADENA was in the prone position on the ground BPA Lebow and ICE-ERO Officer Wederquist handcuffed him. Once handcuffed, BPA Lebow conducted a pat down search for any weapons. Agents then placed CADENA in a Border Patrol vehicle at approximately 9:40 a.m. and transported him to Grand Forks Sector Headquarters in Grand Forks, North Dakota for processing.

## 4)  POST ARREST INVESTIGATION.

On August 18, 2025, SBPA McIntee transported CADENA to the Grand Forks Sector Headquarters where he was enrolled into NGI/IDENT, a fingerprint identification system. The NGI/IDENT results revealed no immigration or criminal history.

Wild Bills Saloon was contacted by ICE-ERO Wederquist to obtain CADENA's I-9 information. The United States Citizenship and Immigration Services form I-9 is an employee eligibility form. An employee at Wild Bill's confirmed CADENA was employed there and provided the I-9, which revealed that CADENA used the alien registration number and social security number from the fraudulent LPR card and social security card to gain employment. The employee also provided photographs of a Utah identification and a permanent resident card. The permanent resident card displays the same photo and alien registration number as the fraudulent card identified by BPA-Lebow.

CADENA is a citizen and national of Mexico.

## 5)  MIRANDA RIGHTS/CONSULAR NOTIFICATION.
On August 18, 2025, BPA Steven Takacs, witnessed by SBPA Daniel Subra, notified CADENA of his Miranda Rights per Service Form I-214. CADENA acknowledged his rights by signing Service Form I-214. CADENA was not willing to answer questions without an attorney present.

In my experience, the above facts constitute a violation of 18 U.S.C. § 111(a)(1), 18 U.S.C. § 1546(a) and 42 U.S.C. § 408(a)(7)(B).

The foregoing is true and correct to the best of my knowledge and belief.

_____
David Marcus
United States Border Patrol Agent

Subscribed and sworn before me this 21st 20th day of August, 2025, in Grand Forks and Fargo, North Dakota, by telephone.

_____
Alice R. Senechal
United States Magistrate Judge